J. Ray Cook v. Commissioner.
Cook v. Commissioner
Docket No. 32037.
United States Tax Court
1952 Tax Ct. Memo LEXIS 151; 11 T.C.M. (CCH) 707; T.C.M. (RIA) 52211; June 30, 1952
*151 Donald B. Clark, Esq., for the petitioner. Everett E. Smith, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent has determined deficiencies in income tax and penalties as follows: Failure to
Substantial
File Decl.
Underesti-
Sec. 293(b)
Estim. Tax
mate of Tax,
Fraud
Penalty Under
Penalty Under
Year
Tax
Penalty
Sec. 294(d)(1)(A)
Sec. 294(d)(2)
1942
$ 2,417.12
$ 1,208.56
1943
7,711.43
3,855.71
$ 462.69
1944
3,306.22
1,653.11
$ 297.56
198.37
1945
20,940.47
10,470.23
1,884.63
1,256.43
1946
14,804.69
7,402.35
1,419.99
691.06
$49,179.93
$24,589.96
$3,602.18
$2,608.55
Findings of Fact The petitioner lived at Maryville, Missouri, during the years 1942 to 1946, inclusive. He filed individual income tax returns for each of the taxable years with the collector for the sixth district of Missouri at Kansas City, Missouri. The petitioner and his father, James F. Cook, operated the Missouri Theatre in Maryville, Missouri, in partnership during the years 1942 through 1946, each owning a one-half interest in the partnership. The petitioner *152 received income from farms during the taxable years, and he owned stocks and bonds. He also, dealt in commodities on exchange in Kansas City and Missouri. The petitioner did not prepare his income tax returns for any of the taxable years, but employed different accountants to prepare his returns. The petitioner graduated from the normal school at Maryville, and he received some business college or commercial college training. The petitioner's net income and income tax liability for the years in question as shown by his filed returns were as follows: Reported
Reported
Year
Net Income
Liability
1942
Loss
($ 438.55)
None
1943
Loss
( 4,937.03)
None
1944
Loss
( 10,475.60)
None
1945
Loss
( 207.00)
None
1946
5,208.44
$972.98
The petitioner's correct net income for each of the taxable years was a follows: Adj. Gross per
Standard or other
Exs. MM, QQ,
deduction per
Year
UU, YY
notice of def.
Net Income
1942
$ 9,981.13
$ 24.89
$ 9,956.24
1943
20,158.20
None
20,158.20
1944
11,893.21
500.00
11,393.21
1945
41,000.65
500.00
40,500.65
1946
36,304.73
500.00
35,804.73
The petitioner's *153 income for each of the taxable years was understated in the amounts set forth below: Year
Understatement
1942
$10,394.79
1943
25,095.23
1944
21,868.81
1945
40,707.65
1946
30,956.29
The correct tax liability on the aforesaid correct net income of petitioner, exclusive of penalties and disregarding any payments made, was substantial in each of the years 1942 through 1945 and greatly exceeded the petitioner's reported liability for 1946. The respondent computed the petitioner's net income for the years 1942-1945 by verifying an audit made by a public accountant engaged by the petitioner with all available records of the petitioner. From all available records of the petitioner the respondent computed petitioner's income for 1946. The petitioner's accountant concurred in the methods and results of respondent's audit for 1946. The petitioner's income for the taxable years was reconstructed by an accountant employed by the petitioner, and by an agent of the respondent, from bank deposits, deposit slips, bank statements, and checks paid by the bank. Cancelled checks of the petitioner showed his cash expenditures for personal expenses to the extent set forth *154 in the following schedule. The respondent's agent determined that some personal living expenses of the petitioner were paid with cash which was not reflected in any of petitioner's records, to the extent of $1,200 each year, in addition to the known expenditures for personal expenses evidenced by checks, and he added, therefore, $1,200 to petitioner's taxable income for each year. He determined, accordingly, that the total amounts of personal expenditures for the taxable years were as follows: Personal
Additional
Expenses
Cash
Shown
Personal
Year
by Checks
Exp. Det'd
Total
1942
$2,691.83
$1,200.00
$3,891.83
1943
1,766.63
1,200.00
2,966.63
1944
2,360.21
1,200.00
3,560.21
1945
1,531.20
1,200.00
2,731.20
1946
3,315.65
1,200.00
4,515.65
In 1944 the Missouri Theatre was destroyed by fire. The accounting records of the theatre were destroyed in the fire. The partnership which operated the theatre received insurance in the amount of $29,946. In the partnership return net loss after recovery of insurance proceeds was reported in the amount of $16,015.43. Included in the theatre property and equipment destroyed in 1944 by fire was an *155 air conditioning system having a depreciated, book value of $3,000 in 1944. The air conditioning system was sold in 1943, and the cost thereof, adjusted for the depreciation reserve, was improperly included in the value of the theatre and equipment just prior to the fire in 1944, in the computation of the amount of the net loss sustained from the destruction by fire. In 1936, O. M. Watkins and his wife, Margaret K. Watkins, owed the petitioner for loans, plus interest, which were evidenced by a note dated December 14, 1936, for $5,884.72, signed by O. M. Watkins and Mildred Margaret K. Watkins. The note was secured by an "assignment upon the New York Life Insurance Company," by a chattel mortgage upon an automobile, by a deed of trust upon real estate in Maryville, and by other collateral. The note was due December 14, 1941. Watkins disappeared in 1938 without any trace of his whereabouts. Petitioner sued Margaret K. Watkins on the note in 1946 or 1947. Judgment was against the petitioner. No deduction for a bad debt loss was claimed in petitioner's return for 1946. In 1945, the petitioner had some dealings with the Shenandoah Popcorn Company. He raised popcorn and sold and shipped *156 it to Shenandoah. He received payment for the shipment in a substantial amount, over $10,000, in 1946, which was not included in gross income in petitioner's income tax return for 1946. Such income was not reported in his return for 1945, either. On August 24, 1950, the petitioner was convicted by the United State District Court, St. Joseph Division, Western District of Missouri, upon his plea of guilty to the offenses of wilfully and knowingly attempting to defeat and evade a large part of income tax due and owing by him to the United States for the calendar years 1945 and 1946 by filing and causing to be filed false and fraudulent income tax returns, and he was fined and sentenced to imprisonment for 90 days. The respondent's computations of the petitioner's net income for 1942 through 1946, are correct. There is no evidence that the respondent included in income items which were not properly includible; nor that the respondent failed to give proper effect to any deductible loss, bad debt, or other item. The differences between the petitioner's reported net income in each of the taxable years, 1942 through 1946, and his correct net income as above stated were due to the petitioner's *157 fraud with intent to evade tax by such fraudulent understatements of net income. Parts of the deficiencies in tax in each of the years 1942 through 1946 are due to petitioner's fraud with intent to evade tax. The failure of the petitioner to file proper declarations of estimated tax within the time prescribed for each of the years in question was due to willful neglect and was not due to reasonable cause. The failure of the petitioner to file the required declarations of estimated tax for the years in question resulted in substantial understatements of income for the years 1943 through 1946. Opinion Issue 1: The 50 per cent fraud penalty. The respondent has the burden of proving that parts of the deficiencies for each of years 1942 through 1946 were due to fraud with intent to evade tax. He introduced evidence relating to each of the five years involved which establishes that the petitioner's understatements of his gross income for each of the five years in his returns for those years were substantial. The petitioner did not introduce evidence to refute and overcome the respondent's determinations as to the amounts of gross and net income realized by the petitioner for each of *158 the five years. If it is established by the respondent that part of the deficiency for each year was due to fraud with intent to evade tax, his addition of 50 per cent of each deficiency as the fraud penalty must be sustained. Consideration has been given to the effort of the petitioner to justify his treatment of some items reported in his returns, particularly his return for 1944, but the petitioner did no more than make bare assertions which are not supported by proof. Also, it is noted that the petitioner in his amended petition challenged the respondent's determination of the 50 per cent fraud penalties for the years 1942, 1943, and 1944, only; and on brief, he has argued, only, that the fraud penalty for the year 1944 should not be sustained. Therefore, the petitioner has adandoned his pleading in his original petition that the respondent erred in adding the 50 per cent fraud penalty to the deficiency for each of the years 1942, 1943, 1945, and 1946, and the issue now relates only to the year 1944. With respect to the year 1944, the petitioner has not introduced evidence to overcome the respondent's determination that part of the deficiency for 1944 was due to fraud with *159 intent to evade tax. In his return for 1944, the petitioner reported loss for the year in the amount of $10,475.60. The respondent has established that the petitioner's gross income for 1944 amounted to $29,958.59; that deductible expenses amounted to $16,729.79; that other allowable deductions amounted to $2,535.59; and that net income without adjustment for cash receipts of $1,200 (representing unrecorded cash disbursements for personal expenses), amounted to $10,693.21. The petitioner understated his net income for 1944 in his return by a substantial amount. His assertion at the trial of this proceeding that such understatements of gross income and net income were due to an innocent belief that a casualty loss from the destruction of the Missouri Theatre in 1944 was larger than even the loss reported on the return is entitled to no weight because it is a bald assertion unsupported by evidence. Furthermore, the petitioner has, otherwise, failed to establish that his understatement of gross receipts in 1944 was not intentional and was not due to fraud. The rule that large understatements of income, when repeated over several years, constitute strong evidence of fraud applies here, *160 and under that rule the respondent's determination of fraud penalties for 1942, 1943, 1944, 1945 and 1946 are sustained. ; , certiorari denied, ; . See, also . Issue 2: The amounts of gross income as affected by cash payments of personal expenses. The amounts of the deficiencies in income tax for each year, 1942 through 1946, are in dispute because the petitioner contends that his gross income in each of the years involved was $1,200 less than the respondent has determined. The petitioner has the burden of proving that this contention is true. He has not met this burden of proof. Therefore, his contention is rejected. The petitioner did not introduce any evidence relating to the total amounts of his personal expenses in each of the taxable years. He has admitted that he had personal expenses, in addition to those paid by checks, which were paid by cash, which was withdrawn from the earnings of the Missouri Theatre, but *161 he has not established that in each year the amount of his personal expenses paid in cash, in addition to those paid by check, amounted to less than $1,200. It is held that the respondent did not err in adding $1,200 to gross income in each year for cash payments of personal expenses in addition to the personal expenses which were paid by check. Issue 3: Bad debt of Watkins. A bad debt loss deduction has been claimed for the first time in the petition for the year 1946. The petitioner has failed to prove that the Watkins debt became worthless in 1946. The facts strongly indicate that the debt became worthless prior to 1946. The claimed deduction under section 23 (k) (4) is denied. For failure of proof, the deduction would be disallowed, also, under section 23 (k) (1) of the Code. Therefore, it is unnecessary to consider whether the Watkins debt was a business or a nonbusiness bad debt. The petitioner in his pleadings raised other questions relating to deductions, but on brief, they have been abandoned. Therefore, we do not consider them. We observe, however, that there was failure of proof which, apparently is the reason for the abandonment of the issues on brief. Issue 4: Penalties *162 under sections 294 (d) (1) (A) and 294 (d) (2). The respondent has properly added both penalties under sections 294 (d) (1) (A) and 294 (d) (2). It has not been shown that the failure of the petitioner to file declarations of estimated tax for 1944 through 1946 within the time prescribed was due to reasonable cause and was not due to willful neglect. Therefore, the respondent's determination of penalties under section 294 (d) (1) (A) is sustained. The failure of the petitioner to file declarations of estimated tax within the time prescribed for 1944, 1945, and 1946 resulted in a substantial understatement of estimated tax. Also, the petitioner made substantial understatement of income and of tax for 1943. "* * * In the event of a failure to file the required declaration, the amount of the estimated tax for the purposes of this provision [section 294 (d) (2)] is zero. [Supplement to Regulations 111, sec. 29.294-1 (b) (3) (A), p. 438; Conference Rep., H.R. Rep. No. 510, 78th Cong., 1st Sess., p. 56.]" Under this regulation and since no evidence was offered by the petitioner with respect to the understatement of estimated tax for any of the years 1943 through 1946, we sustain *163 the respondent's determination that the petitioner is liable for penalties under section 294 (d) (2) for the years 1943, 1944, 1945, and 1946. Decision will be entered for the respondent.